Martín Guajardo v. The Immigration and National Security Commission This morning I think what we have is the case that's been, the issues that are here have been before this court and other courts for some time. I think as early as 1917 when we passed the Nationality Act, we have what is the beginning of a remedy. A remedy that we now look at. It's what we call a sea remedy, a remedy for an alien who is, or a non-citizen, who is in the United States who is found excludable or deportable. We have a case that brings us, brings the question again, once again, to the, to the question of why should we treat someone, as far as the remedy is concerned, why should we treat someone who is in exclusion proceedings different from someone who is in deportation proceedings. And the facts of this case, we have a woman who's now 50, 50 years old, and she's been living in the United States for 30 years, has United States citizen children, married, husband's disabled. Well, she came here in 1974, and she escaped detention until 94, where she was caught with false documentation. And then she was once more escaped, and she was finally found, and 10 days later she was married. It doesn't strike me that she has been someone who has been out front with her, that you're painting her. We have a person who's been in the United States illegally for a long period of time, and the question is whether or not the due process or equal protection clause validly allows a different type of proceeding against such a person. Isn't, that's what we have, and it's bringing up the exclusion versus the deportation. That's the issue we have. It's a legal question. And, and the, if I may respond. And why, why is it that you feel, are you basing this on a, on a base of due process or equal protection? I think it's a due process question that we have to, both due process and equal protection, but it's a due process question. I think what we have here is if the, if she had not left the United States, and she was in front of the immigration judge, would she be entitled to the same remedy, adjustment of status, or review of the denial of that application? It is the same remedy. It is simply done by a different adjudicator. And what I'm having trouble with is, either under due process or equal protection, is the argument that just because they're different, they're necessarily a violation. Why, I mean, assuming there is some difficulty with having Congress treat people in exclusion from different, from people of deportation, I mean, that's a big hurdle for you already. But assuming there is, there is a difficulty there, you've got, why is there a disadvantage, procedural or substantive, in having the matter adjudicated by one decision maker and another? The Congress may, or the President may choose different decision makers, and so long as they are both fair, why is that of any constitutional consequence? I think that the, the difference here is that the district director will have jurisdiction over all applications for adjustment of status and all applications for visa petitions. The fact that you can review the application for adjustment of status before the immigration judge, that is where I think the due process violation comes into play. And it's important to – I'm sorry. You need to explain, though, why. All right. Someone comes into the country illegally. They get married to a United States citizen. Prior to April 30, 2001, the Section 245I permitted that individual for a fee to essentially get over the inspected and admitted provision of the immigration law. So it didn't matter if you ran across how you, how you came in, and you could take your application so long as you filed your visa petition or any other petition that would allow you to be able to go in front of the district director. It didn't matter how you came in. Here's my $650, or here's my $1,000 after they raised the fee. And if the district director denied that application, the district director's decision would then be reviewable by the immigration judge. In this case, because she is placed in exclusion proceedings, she is relegated solely to the decision of the district director. And that's not correct. It's – we all recognize that Congress can make the – can distinguish how it's going to treat aliens in this country. If Congress decides to – if they decided a few years ago, Central Americans were going to go ahead and allow them to have permanent residence. So she presents her petition to the district director, and he denies it. There's no relief from that at all? Two different petitions. She presents the first petition to the district director, and I think this is where I would respond to Judge Wallace to his question earlier, and that is she presents her visa petition to the district director, knowing that she just married him right after she was placed in proceedings, in exclusion proceedings. The district director, in his decision that's part of the experts, district director turns around and interviews her, recognizes she's been here for a very long period of time, recognizes that the relationship with that disabled man, her husband now, has been – it's a bona fide relationship. He turns around and approves the visa petition. That approval of the visa petition then allows him to take the second step and look at the application for adjustment of status. The step that we are interested in is the one that did not occur. When she is in front of Judge Dana Marks Keener, and Judge Keener essentially says, I won't look at your application for adjustment of status, one, the district director hasn't adjudicated it, he's denied your waiver, but he hasn't adjudicated the 485, I can't look at it because you're in exclusion proceedings, that's a difference without – that's a line of demarcation drawn in the sand that has no rational basis. Why? Because the Court in matter of Castro in 1996, the Board of Immigration to allow the alien to leave the country, give him an advance parole on a Form I-131, when he comes back in, no matter if he was in illegal status, the district director can deny the application for adjustment of status and the immigration judge can go ahead and review that application. Kennedy. The basis of your argument that it's a violation of the Constitution to have exclusion proceedings and deportation proceedings, that is, that there's a violation of the Due Process Clause and its equal protection component if there's exclusion and deportation proceedings? I think that the short answer is yes to that question, because now we've gotten rid of that difference under IRA. IRA, if I could get to the first point. I understand, but we're still back where we were, and Congress did that. They didn't do it because we told them to. That was their idea. But you – the basis of your argument is that it's a violation of the Constitution to have separate proceedings which are exclusion and deportation. We have given pretty much carte blanche to the Congress on making these determinations. What's your best case that it's a violation of the Constitution to separate treat the two separately in deportation and exclusion proceedings? I think the words of the Attorney General in the decision of Matter of Val, it's volume 1, page 1, I believe, 1940, he indicated in connection with the application for 212C relief that to make this distinction between the excludable alien and the deportable alien is capricious and whimsical. Well, I understand. But do you have a case of some court? What's your best case of a court, spring court, Ninth Circuit? Well, our Ninth Circuit case is going to be the Servina-Spinoza. Servina-Spinoza certainly takes a look at both Fuentes Campos, takes a look at Estrada Torres. Fuentes Campos being the board decision that essentially allowed for availability up to 212C relief after ADEPA, after April 24th, 1996, and essentially allowed for the availability of 212C relief for aliens and exclusion. So you're saying we could, this panel could, cite Espinoza and set aside all differences between deportation and exclusion. Is that right? And based on the Constitution, that's your position? I think that in this fact situation here for the remedy, you know, we go to the medicine cabinet and look at... I understand you pick up one end of the stick, you pick up the other. And I'm just wondering if you are really asserting to us that we as a panel should hold unconstitutionally the unconstitutional, the distinction between exclusion and deportation. I think today, Your Honor, we may have to take that leap of faith, and we may have to do it because it's the right thing to do. And it is wrong for us to continue to perpetuate an injustice that's been... But we can't do it just because we think it's wrong. That's what politicians do. We have to say it's unconstitutional. But we can look at the matter of Francis that was decided by the Second Circuit, and later on the Tapia case that we have here from the Circuit, when we had to grapple with the issue of the availability for 212C relief for deportable aliens. And we recognize that in Tapia Cunha, we recognize that in Francis' case as well, so that there is precedent. And the precedent begins as far back as 1940, 23 years after 1917, when the Attorney General recognized it on his own, and in 1952, when we had that distinction put back in place as a result of the Immigration Nationality Act. I think today, we can look back and we can say, yes, here is the precedent that we have. It's not only in the Ninth Circuit, but it's in various circuits throughout the country. And we've also seen it at the Board of Immigration Appeals, although not recently. Thank you, Your Honor. I understand your position. May I please the Court? My name is Jennifer Paisner on behalf of the Respondent, John Ashcroft. As the Supreme Court and this Court have consistently recognized, aliens in exclusion proceedings who have not been admitted to the United States are consistently and consistent with the Constitution treated differently than aliens in deportation proceedings. This is because aliens in exclusion proceedings are not entitled to the same constitutional protections as aliens in deportation proceedings. There is a long line of Supreme Court and Ninth Circuit case law recognizing this distinction. Both the Supreme Court and this Court have recognized that the only process to which an alien in exclusion proceedings is due is that process prescribed by the Attorney General. INA Section 245, which is the section dealing with adjustment of status, specifies that the Attorney General, Congress left it to the Attorney General's discretion to specify procedures by which aliens may apply for adjustment of status. In 8 CFR Section 245, the Attorney General specifies that aliens in exclusion proceedings may apply for adjustment of status to the District Director of the INS. There's a long line of case law specifying that this is the process that has been prescribed by Congress and the Attorney General and that this process is constitutionally sufficient. In fact, in Sereven Espinoza, which this Court specifically asked the parties to address, this Court recognized, and I'll quote from the opinion, our immigration law has generally treated aliens who are already on our soil deportable more favorably than aliens who are merely seeking admittance. In Sereven Espinoza, this Court addressed the situation where aliens in exclusion proceedings were entitled to apply for a remedy under 212C that aliens in deportation proceedings were not allowed to apply for. And recognizing this longstanding distinction between aliens in exclusion proceedings and aliens in deportation proceedings, the Court proceeded on that basis. Here, we have the complete opposite of the situation in Sereven Espinoza. It's also worth noting that this Court's opinion in Sereven Espinoza was based almost entirely on a finding that Congress had specifically that the equal protection challenge was to an administrative policy that violated a statutory command, as I just discussed. In the case of 245 relief, Congress specifically left it to the Attorney General's discretion to specify those procedures by which aliens may apply for adjustment of status. So, again, the situation in this case is the complete opposite of this Court's decision in Sereven Espinoza. The petition here has been adjudicated? There's actually the petition for adjustment of status. There's no evidence in the record that presumably at some point it was adjudicated but there's no evidence in the record as to how it was adjudicated. So I don't believe the district director had actually ruled on the application at the time of the hearing before the immigration judge. But this is not a judicially noticeable fact? There's no evidence whatsoever in the record. I don't believe that information appears anywhere. I do know that at the time of the hearing before the immigration judge, the district director had not yet ruled on the application. Is there any appeal from the, let's say the district director decides that application adversely? Is there any kind of review of that decision? I don't believe there is. It begins and ends with the district director? I believe it does. Of course, this Court has also recognized that there's no equal protection violation just because an application for relief under the immigration laws is adjudicated by the INS. In cases such as, I can cite to you, Marcello versus, they're cited in our brief, but they do stand for the proposition that an equal protection violation cannot be violated from a combination of prosecutorial, investigative, and adjudicated functions within the INS. Briefly, aside from the fact that as an alien exclusion proceedings, Ms. Alvarez-Garcia has no, is not entitled to the same constitutional protections, she also can't establish an equal protection claim because she's not similarly situated to an alien exclusion and deportation proceedings. For somewhat obvious reasons, she's seeking admittance into the United States. Aliens and deportation proceedings have already been inspected and admitted. If the Court has no further questions, thank you. Thank you. Thank you. Thank you.
judges: Wallace, Kozinski, Thomas